110 T.C. No. 21


UNITED STATES TAX COURT


RICHARD LEO WARBUS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2194-96.                    Filed April 21, 1998.



        P, a member of a federally recognized tribe of
American Indians, purchased a boat that he used in
treaty "fishing-rights-related" activity as defined in
sec. 7873, I.R.C.  In 1984, P obtained a commercial
loan for items related to the fishing boat from the
same lender who financed the purchase of the boat.  The
loan repayment was guaranteed by the Bureau of Indian
Affairs (BIA).  When P failed to make payments on the
loan as they became due, the lender repossessed and
sold the boat.  In 1993, pursuant to its loan guaranty,
the BIA paid to the lender outstanding principal and
interest, which it deemed uncollectible from P.  As a
result of the BIA payment and cancellation of his debt,
P enjoyed discharge of indebtedness income in 1993.  P
did not report discharge of indebtedness income,
believing it to be exempt from tax as income from
Indian fishing-rights-related activity as described in
sec. 7873.

Held: Discharge of indebtedness income received by P from the BIA is not excludable from income under sec. 7873 because it was not derived by P directly or through a qualified Indian entity from a fishing-rights-related activity.

Daniel A. Raas, for petitioner.

Christal W. Hillstead, for respondent.

OPINION

PARR, Judge: This case was heard by Special Trial Judge John F. Dean pursuant to section 7443A(b) and Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

DEAN, Special Trial Judge: Respondent determined a deficiency in petitioner's 1993 Federal income tax of $3,054 and additions to tax of $763.50 under section 6651(a) and $127.92 under section 6654(a). Petitioner concedes that he received unreported rental income of $6,000 and nonemployee compensation of $3,700 subject to self-employment tax, that he failed to file a Federal income tax return for the year 1993, and that he did

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.

not make estimated tax payments for the taxable year.[2]  The sole issue for decision is whether certain discharge of indebtedness income he received in the year 1993 is not subject to tax because it is income derived from Indian fishing-rights-related activity.

All of the facts of this case are contained in a Stipulation of Facts that along with an attached exhibit is incorporated herein by reference.

### Background

Petitioner resided in Bellingham, Washington, at the time the petition was filed in this case.

Petitioner was in 1993 and is still a member of the Lummi Nation (nation), a federally recognized tribe of American Indians.  The Lummi Nation is a signatory of the Treaty between the United States and the Dwámish, Suquámish and other allied and subordinate tribes of Indians in Washington Territory concluded on January 22, 1855, at Point Elliott, Washington Territory, 12

---

[2]Petitioner made no argument and presented no evidence to show that his failure to file was due to reasonable cause and not to willful neglect, nor did he argue or prove that his failure to make estimated tax payments is excused because of a statutory exception.  We therefore deem these issues to be conceded by petitioner.  Rule 149(b); see Rothstein v. Commissioner, 90 T.C. 488, 497 (1988); Cerone v. Commissioner, 87 T.C. 1, 2 n.1 (1986).

Stat. 927 (1859), in which the nation reserved fishing rights at all of its usual and accustomed fishing grounds and stations. See also United States v. State of Washington, 520 F.2d 676 (9th Cir. 1975).

In or sometime before 1984, petitioner purchased a fishing boat named the Denise W. The boat purchase was financed through a combination of a commercial loan and a promissory note given to the former owners of the Denise W.

In 1984 petitioner obtained a loan of $50,000 from the same commercial lender that financed part of the boat purchase. The $50,000 was used to make a payment toward the purchase of a salmon net, to make a payment on the note held by the former owners of the Denise W, to make insurance and mortgage payments, and for miscellaneous items. The loan was guaranteed through a Federal loan guaranty program administered by the Bureau of Indian Affairs (BIA).

Petitioner operated the Denise W in treaty fishing-rights-related activities of the nation from about 1986 through 1991. During that period petitioner was licensed to fish in waters within the nation, and the Denise W was registered by the nation for use in the treaty fishing-rights-related activities of the nation.

There came a time in or around the year 1993 when petitioner did not make his loan payments as they became due. As a result,

the <u>Denise W</u> was repossessed and sold by the commercial lender to satisfy the unpaid loan amount.  The BIA in 1993, pursuant to its loan guaranty, paid lenders a total of $13,506.88, of which $5,589.45 was applied to principal and the balance to interest. For the year 1993 petitioner was sent a Form 1099-G from the BIA reporting income in the amount of $13,506 from the "discharge of indebtedness".  Petitioner did not file a Federal income tax return for the year 1993.

The parties agree that petitioner is entitled to one personal exemption and a standard deduction based on married-filing-separate status for the year 1993.

Discussion

It is petitioner's position that the income from discharge of indebtedness he received in 1993 is not subject to tax because it is income derived by an Indian from the exercise of fishing rights under section 7873.

Section 7873 provides in relevant part:

> SEC. 7873(a).  In General.--
>
>> (1) Income and self-employment taxes.--No tax shall be imposed by subtitle A on income derived--
>>
>>> (A) by a member of an Indian tribe directly or through a qualified Indian entity, or
>>>
>>> (B) by a qualified Indian entity,
>>
>> from a fishing rights-related activity of such tribe.

(2) Employment taxes.--No tax shall be imposed by subtitle C on remuneration paid for services performed in a fishing rights-related activity of an Indian tribe by a member of such tribe for another member of such tribe or for a qualified Indian entity.

(b) Definitions.--For purposes of this section--

(1) Fishing rights-related activity.--The term "fishing rights-related activity" means, with respect to an Indian tribe, any activity directly related to harvesting, processing, or transporting fish harvested in the exercise of a recognized fishing right of such tribe or to selling such fish but only if substantially all of such harvesting was performed by members of such tribe.

(2) Recognized fishing rights.--The term "recognized fishing rights" means, with respect to an Indian tribe, fishing rights secured as of March 17, 1988, by a treaty between such tribe and the United States or by an Executive order or an Act of Congress.

(3) Qualified Indian entity.--

(A) In general.--The term "qualified Indian entity" means, with respect to an Indian tribe, any entity if--

(i) such entity is engaged in a fishing rights-related activity of such tribe,

(ii) all of the equity interests in the entity are owned by qualified Indian tribes, members of such tribes, or their spouses,

(iii) except as provided in regulations, in the case of an entity which engages to any extent in any substantial processing or transporting of fish, 90 percent or more of the annual gross receipts of the entity is derived from fishing rights-related activities of one or more qualified

Indian tribes each of which owns at least 10 percent of the equity interests in the entity, and

(iv) substantially all of the management functions of the entity are performed by members of qualified Indian tribes.

For purposes of clause (iii), equity interests owned by a member (or the spouse of a member) of a qualified Indian tribe shall be treated as owned by the tribe.

(B) Qualified Indian tribe.--For purposes of subparagraph (A), an Indian tribe is a qualified Indian tribe with respect to an entity if such entity is engaged in a fishing rights-related activity of such tribe.

The parties agree that petitioner operated the Denise W in a "fishing rights-related activity".  See sec. 7873(a)(1) and (2). From this agreed starting point, petitioner argues that the purchase of the Denise W and expenditures for associated equipment and operating expenses are fishing-rights related and that therefore the income from discharge of indebtedness incurred to meet these expenses is fishing-rights related.

Every item of a person's gross income is subject to Federal income tax unless there is a statute or some rule of law that exempts the person or the item from gross income.  HCSC-Laundry v. United States, 450 U.S. 1, 5 (1981).  Tax exemptions, including those affecting native peoples, are not granted by implication.  If Congress intends to exempt certain income, it must do so expressly.  Earl v. Commissioner, 78 T.C. 1014, 1017

(1982); <u>Lazore v. Commissioner</u>, T.C. Memo. 1992-404, affd. in part and revd. in part 11 F.3d 1180 (3d Cir. 1993).

Under section 7873, income derived by a member of an Indian tribe "directly or through a qualified Indian entity" from a "fishing rights-related activity of such tribe" is not subject to income tax.  For purposes of section 7873, income derived from "fishing rights-related activity" means income derived from activity "directly related" to harvesting, processing, transporting, or selling fish in the exercise of recognized fishing rights of an Indian tribe.  Sec. 7873(b).

In order for petitioner's argument to prevail, we must find that his discharge of indebtedness income is derived from <u>activity</u> "directly related" to harvesting, processing, transporting, or selling fish in the exercise of recognized fishing rights of an Indian tribe.  To make that determination, we must examine the nature of petitioner's income.

The income at issue results from petitioner's discharge of indebtedness for funds he borrowed in part to purchase property with which to engage in fishing-rights-related activity.  In or around 1993 petitioner's creditor seized collateral to satisfy part of his unpaid loan amount.  In 1993 the BIA paid off petitioner's debts to the original lenders pursuant to, we presume, the terms of the Indian Loan Guaranty and Insurance Fund.  See Indian Financing Act of 1974, Pub. L. 93-262, sec.

201, 88 Stat. 79, current version at 25 U.S.C. sec. 1481 (1994). This payment satisfied the remaining original loan amount, paying it in full.

Upon payment of petitioner's obligations, however, the BIA assumed the rights of the debtors insured under the fund, including the right to cancel as uncollectible any portion of petitioner's obligations. See 25 U.S.C. sec. 1491 (1994). Petitioner therefore received his discharge of indebtedness income from the Bureau of Indian Affairs, Department of the Interior, an instrumentality of the United States. See An Act to provide for the appointment of a commissioner of Indian affairs, and for other purposes, July 9, 1832, ch. 174, 4 Stat. 564 (1846), R.S. sec. 462, current version at 25 U.S.C. sec. 1 (1994).

Borrowed funds are not included in a taxpayer's income. Nor are repayments of a loan deductible from income. When, however, one's obligation to repay the funds is settled for less than the amount of the loan, one ordinarily realizes income from discharge

of indebtedness.[3]  Sec. 61(a)(12); <u>Vukasovich, Inc. v. Commissioner</u>, 790 F.2d 1409, 1413-1414 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-611.

Income from the discharge of indebtedness results from the release of a taxpayer from an obligation to repay a debt that causes "a net increase in assets equal to the forgiven portion of the debt".  <u>United States v. Centennial Sav. Bank FSB</u>, 499 U.S. 573, 582 (1991); <u>Commissioner v. Tufts</u>, 461 U.S. 300, 310 n.11 (1983) (the doctrine relies on a freeing-of-assets theory to attribute ordinary income to the debtor upon cancellation); <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1, 3 (1931);[4] <u>Cozzi v. Commissioner</u>, 88 T.C. 435, 445 (1987) (an accession to income due to a freeing of assets).

Petitioner's discharge of indebtedness income is the result of the freeing of his assets from obligations by the BIA in

---

[3]Depending upon the solvency of the taxpayer and the source or use of the funds borrowed, an amount of income from discharge of indebtedness may be deferred or excluded from income under sec. 108.  Petitioner has not raised exclusion under sec. 108, and the record does not support one.

[4]In an earlier case, <u>Bowers v. Kerbaugh-Empire Co.</u>, 271 U.S. 170, 175 (1926), forgiveness of indebtedness was described as a transaction that "did not result in gain from capital and labor, or from either of them, or in profit gained through the sale or conversion of capital."  See discussion in <u>Vukasovich, Inc. v. Commissioner</u>, 790 F.2d 1409, 1414-1415 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-611.

1993,[5] not from any _activity_ by him "directly related" to harvesting, processing, transporting, or selling fish in the exercise of recognized fishing rights of an Indian tribe.  We note that even had petitioner's loan proceeds been income in the first instance in 1984, their source was not activity directly related to harvesting, processing, transporting, or selling fish in the exercise of recognized fishing rights of an Indian tribe. Forgiveness of the repayment of those loan proceeds by a third party cannot convert the freeing of petitioner's assets into fishing-rights-related income merely because the loan proceeds were used to purchase equipment used in such an activity.

The BIA does not engage in harvesting, processing, transporting, or selling fish and is not a "qualified Indian entity" under section 7873(b)(3).  Petitioner's income was generated in the year 1993 by the BIA's discharge of his indebtedness.  Petitioner therefore did not receive directly, or through a qualified Indian entity, income from a fishing-rights-related activity.

---

[5]The parties stipulated that petitioner was engaged in fishing-rights-related activity in the years 1986 through 1991.

We find to be correct respondent's determination that petitioner's discharge of indebtedness income is includable in income in 1993.

<u>Decision will be</u>

<u>entered for respondent</u>.